IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Yolanda S. C.[1],                                                    Case No. 2:25-cv-00482-JR

       Plaintiff,                                                  OPINION AND ORDER

       v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

RUSSO, Magistrate Judge:

Plaintiff Yolanda C. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits and Social Security Income under the Social Security Act. For the reasons

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

explained below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Born in 1982, plaintiff alleges disability beginning April 1, 2021, due to "carpal tunnel, fib[ro]myalgia, limited rotation of neck, back issues, numbness in fingers, residual issues from coma-18 days, [posttraumatic stress disorder]-from hospital stay, [and] depression." Tr. 327, 320. Her claims were denied initially and upon reconsideration. On March 28, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 95-125. On May 29, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 46-58. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 48. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease of the lumbar and cervical spines, fibromyalgia, bilateral carpal tunnel syndrome, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD)." Tr. 49. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because he did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except:

> [She] must avoid climbing ladders, ropes, and scaffolding as well as crawling and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching.

Page 2 – OPINION AND ORDER

> The claimant is capable of occasional pushing and pulling bilaterally with the upper extremities. The claimant can frequently handle[] and finger with the bilateral upper extremities. The claimant can have occasional exposure to extreme cold, extreme hot, wetness, humidity, or concentrated fumes odors or other pulmonary irritants. The claimant can never work at unprotected heights. The claimant is capable of work classified in the Dictionary of Occupations Titles (DOT) with SVP ratings 1 or 2 where responsibilities are repetitive in nature with no assembly line work or work with strict hourly quotas with incidental interaction with the general public (i.e., can be around people but that there job does not require interaction with the public) and occasional interaction with co-workers and supervisors in a position where changes in work setting and processes are less than occasional.

Tr. 51.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 56. At step five, the ALJ concluded, based on the VE's testimony, there were a significant number of jobs in the national economy plaintiff could perform despite her impairments. Tr. 57.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) discrediting her subjective symptom ; and (2) improperly assessing the medical opinions of plaintiff's physician, Annika Maly, MD, and plaintiff's mental health therapist, Anna Lembke, LPC.

### I.      Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning her physical and mental limitations. Pl. Br. 11-15, ECF 9; Pl. Reply Br. 5-7, ECF 12. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).[2] A general assertion the claimant is not credible is

---

[2] There is no allegation or affirmative evidence of malingering.

Page 3 – OPINION AND ORDER

insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her March 2024 hearing, plaintiff testified she had to relearn how to walk, use her hands, and "how to do everything all over again" after surviving a coma in 2016. Tr. 106. She testified that the coma affected her brain. *Id.* For example, she was unable to form sentences and "[s]till to this day my brain doesn't compute things like normal." *Id.* Additionally, following her coma, plaintiff experienced severe pain all over her body, her neck, shoulders, muscles, and joints due to fibromyalgia and carpal tunnel. Tr. 106-107. Plaintiff noted that despite being advised against working after she was released from the hospital, she had to work to avoid being homeless. Tr. 106. She worked at a local store and tavern where she waited on customers, cooked, bartended, operated the cash register, and bused tables. Tr. 105. She explained her pain "was just too

unbearable" while working and testified she could barely walk after working her shift. Tr. 105, 106-07.

Similarly, in her function reports, plaintiff described experiencing "constant ongoing pain" all over her body, from her neck to her lower back, and from her knees to the tips of her toes. Tr. 344. Plaintiff testified she experienced pain all day and all night, had to stretch multiples times throughout the day, and was unable to sit down for more than fifteen or twenty minutes at a time. *Id.* In her 2021 function report, plaintiff testified she could walk for fifteen to twenty minutes at a time before having to rest for around two minutes. Tr. 349. [3] She testified her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, use her hands, talk, remember, concentrate, understand forms, get along with others, and complete tasks. Tr. 349, 393. She also described pain and numbness in her hands and fingers bilaterally due to fibromyalgia and carpal tunnel syndrome. Tr. 344.

Regarding her activities of daily living, she testified she cared for and cooked for her daughter but had to take her time when doing so because her fingers would get numb and she would have pain in her wrists. Tr. 346-48. In her most recent function report, plaintiff testified she had extreme anxiety, did not trust people, and would only go into town for necessities such as groceries and doctor appointments. Tr. 392. She preferred her daughter to join her because her daughter calmed her anxiety. *Id.* She testified she struggled to follow written and spoken instructions. Tr. 393. She also explained in more detail how her limitations affected her ability to care for herself such as: experiencing pain and instability when stepping in and out of the bathtub,

---

[3] In her 2022 function report, plaintiff testified she could walk for twenty to thirty minutes before needing to rest for ten to fifteen minutes. Tr. 393.

Page 5 – OPINION AND ORDER

being unable to clasp regular support bras, and having to "place the silverware in [her] hand a certain way" to feed herself but still "fumble[d] the silverware quite often." Tr. 389.

After summarizing her testimony, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 52. The ALJ then summarized plaintiff's medical record. Tr. 52-54.

The ALJ did not explain how or in what ways plaintiff's symptom testimony was inconsistent with her medical record. *See* tr. 52-54. Nevertheless, the ALJ concluded "the objective physical evidence in this case does not support greater limits than addressed in the residual functional capacity assessed above," tr. 52, and

> [i]n sum, the above residual functional capacity assessment is supported by the totality of medical evidence and the claimant's allegations. No single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that the claimant is not as limited as is alleged. For all the foregoing reasons, I find that since the date of alleged onset of disability the claimant has been able to perform light work consistent with the residual functional capacity as assessed.

Tr. 55-56

The ALJ did not provide rationale for reaching the above conclusions. *See* tr. 51-54. For example, the ALJ referenced an x-ray of plaintiff's lumbar spine from October 2021 showing mild spondylosis at L5-S1 and an x-ray of her cervical spine from November 2021 showing mild cervical disc degeneration. Tr. 52, 895, 777. The ALJ did not explain how those findings were inconsistent with plaintiff's testimony she had back pain and was physically limited as to walking and sitting. *See* tr. 52. Further, the ALJ referenced an MRI of plaintiff's lumbar spine from February 2022 showing "multilevel disc and facet degeneration most notably at L5-S1 where there

Page 6 – OPINION AND ORDER

is moderate bilateral foraminal narrowing resulting in encroachment on the exiting L5 nerve root" and recognized that plaintiff's "degenerative endplate edema at L5-S1 and active Schmorl node along the inferior L5 endplate may also represent focal sources for pain." Tr. 52, 782. Those MRI and x-ray findings supported plaintiff's testimony. The ALJ did not explain how those findings did not support plaintiff's testimony or why there were clear and convincing reasons to discount that testimony.

Regarding plaintiff's hand and wrist pain, the ALJ acknowledged that plaintiff's doctor referred her for EMG testing after she complained of numbness and tingling in both hands. Tr. 53, 954, 1387. The neurologist who interpreted the EMG testing opined: "[t]he electrophysiologic studies demonstrated bilateral median nerve entrapment across the wrists, as evidenced by slowing across the wrists. This has resulted in a mild to moderate degree of motor axon degeneration." Tr. 1389. The ALJ also noted that plaintiff's doctor opined her bilateral carpal tunnel was consistent with mild-moderate deficit and that she declined steroid injections. Tr. 53, 1408. After referencing the above medical findings, the ALJ stated "the [RFC] provides for frequent bilateral handling and fingering with the upper extremities." Tr. 53.

As explained above, absent evidence of malingering, the ALJ must provide "clear and convincing reasons" to discount plaintiff's testimony. *See Smolen*, 80 F.3d at 1281. The Court finds the ALJ's reasons for rejecting plaintiff's physical testimony are either legally insufficient and/or not supported by substantial evidence. "Providing a summary of medical evidence in support of a [RFC] finding"– even a detailed one – "is not the same as providing clear and convincing reasons for finding the claimant's testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). Stated differently, summarizing the medical record does "not provide

Page 7 – OPINION AND ORDER

enough reasoning [for a court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.* (internal quotations omitted).

Moreover, it is well-established in this District that "mild degenerative disc disease can have disabling effects." *Dahl v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (collecting cases); *see also Ellefson v. Colvin*, 2016 WL 3769359, *6 n.5 (D. Or. July 14, 2016) ("mild degenerative changes do not necessarily equate to mild functional limitations"); *Cortes v. Colvin*, 2016 WL 1192638, *4 (C.D. Cal. Mar. 28, 2016) ("an ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate") (citation and internal quotations omitted).

It is unclear to the Court how the records of bilateral carpal tunnel relied upon by the ALJ did not support plaintiff's testimony. Plaintiff "can't hold things in [her] hands," can no longer buy a gallon of milk because she "can't buy something heavy," "can't be holding anything in [her] hands when [she's] trying to go up the stairs" because she needs to hold the railing to balance, and has to "wear slip-on shoes because it hur[ts] to try to bend over and tie [her] shoes." Tr. 109.

In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony. The clear and convincing legal standard is "the most demanding required in Social Security cases" and the ALJ failed to meet that standard here. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Thus, the ALJ erred to discount plaintiff's symptom testimony and ALJ's decision as to this issue is accordingly reversed.

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ erred by improperly discounting the medical opinions of plaintiff's physician, Annika Maly, MD, and mental health therapist, Anna Lembke, LPC. Pl. Br. 4-11.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. (citing 20 C.F.R § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Kevin R. H.*, 2021 WL 4330860 at *4. At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

### A.    Annika Maly, MD

On October 19, 2023, Dr. Maly conducted a disability exam on plaintiff and provided a corresponding physical residual functional capacity assessment. Tr. 2022-26, 1787-94. Dr. Maly diagnosed plaintiff with chronic pain syndrome, fibromyalgia, chronic neck pain, shoulder pain,

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

and chronic hip pain. Tr. 1787. She opined plaintiff could occasionally and frequently lift or carry no more than ten pounds. Tr. 1788. She opined plaintiff's upper and lower extremities had limited ability to push, pull, and operate hand or foot controls. *Id.* She explained plaintiff felt numb in her fingers and tops of her feet and was "not able to carry more than a gallon of milk or carry laundry more than [five] minutes." Tr. 1789. Dr. Maly said plaintiff could stand and walk for less than two hours and sit for less than six hours in an eight-hour workday. Tr. 1788. She opined plaintiff could only stand for thirty minutes at a time and sit for about fifteen minutes at a time because of her back pain. Tr. 1789. Dr. Maly stated plaintiff struggled to dress herself and avoided kneeling, crouching, and crawling due to pain and issues with balance. *Id.* Finally, Dr. Maly opined plaintiff was limited in her ability to handle objects with gross manipulation, finger objects with fine manipulation, grasp, feel, and reach in all directions. Tr. 1790. She explained plaintiff had the handling and fingering limitations in part due to plaintiff's bilateral numbness in digits one through three. *Id.*

After summarizing Dr. Maly's disability exam and function report, the ALJ found her opinions not persuasive. Tr. 54. The ALJ found Dr. Maly's opinions "not supported by her records" and "not consistent with the record." Tr. 54-55. The ALJ did not support those findings with substantial evidence.

Regarding supportability, the ALJ found Dr. Maly's opinion unsupported by her notes from plaintiff's disability exam and because her opinion was based on plaintiff's symptom testimony. Tr. 54-55. First, the ALJ stated Dr. Maly "completed the form but only noted [] the claimant would stand up frequently during the visit and walked around the room while going over the paperwork. No other abnormalities were noted." Tr. 54-55, 2022, 2025 (internal citation omitted). That was inaccurate. Dr. Maly commented plaintiff frequently stood and paced while reviewing paperwork,

Page 10 – OPINION AND ORDER

but she explained that was because "she is not able to sit for long periods of time." Tr. 2025. Further, Dr. Maly noted several other abnormalities such as plaintiff's back pain, myalgias, neck pain, knee pain, shoulder pain, hip pain, weakness, numbness, difficulty balancing, difficulty reaching, inability to hold anything for an extended period, bilateral carpal tunnel, memory loss due to medical condition, and "difficulty with fine manipulation due to numbness in fingers." Tr. 2023.

The ALJ also found that Dr. Maly's opinions were unsupported because her "opinions are based mainly on the claimant's subjective complaints." That rationale was also error. Although it may sometimes be proper for an ALJ to reject a medical opinion as unsupported because it was largely based on unreliable subjective symptom testimony, here the ALJ did so in error for two reasons. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (ALJ did not err in rejecting a medical opinion that was based on the claimant's "self-reports of pain" where there was evidence of drug-seeking behavior) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). First, as explained above, the ALJ errored in discrediting plaintiff's symptom testimony. Because Dr. Maly did not support her opinions with unreliable subjective symptom testimony, the ALJ erred to find her opinions unsupported on that basis.

Second, the ALJ found plaintiff had fibromyalgia as a severe medically determinable impairment at step two. Tr. 49. Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue diagnosed entirely on the basis of a patient's reports of pain and other symptoms. *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). There are no clinical laboratory tests to confirm the diagnosis. *Id.* Fibromyalgia's cause or causes are unknown, there is no cure, and its symptoms are entirely subjective. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). Because fibromyalgia

Page 11 – OPINION AND ORDER

is diagnosed based on plaintiff's symptom testimony, and plaintiff had fibromyalgia, the ALJ erred to find Dr. Maly's opinions unsupported because they were based on plaintiff's symptom testimony.

Regarding consistency, the ALJ found Dr. Maly's opinions inconsistent with imaging of plaintiff's spine and plaintiff's ability to care for her children and travel. Tr. 55. As explained in Section I, plaintiff's x-ray and MRI imagining showing "multilevel degenerative disc disease with moderate to severe left neural foraminal narrowing, C7, with possible impingement, and overall general degeneration with mild to moderate stenosis" and "mild multilevel thoracic disc and facet degeneration" was consistent with plaintiff's limitations. Tr. 53, 1990, 2158. Neither of the medical records cited by the ALJ support his assertion that "[i]maging of the claimant's spine does not support things like no reaching and lifting less than 10 pounds." Tr. 55, *see* tr. 1990, 2158.

The ALJ also erred in finding plaintiff's ability to care for her children and travel inconsistent with Dr. Maly's opinions. Tr. 55. The ALJ did not explain how plaintiff's ability to care for her children or occasionally travel was inconsistent with Dr. Maly's opinions that plaintiff could stand and walk for less than two hours and sit for less than six hours in an eight-hour workday, was unable to hold anything in her hands for an extended period of time or had difficulty with fine manipulation. Tr. 55, 1788, 2023. Consistent with both Dr. Maly's opinions and plaintiff's ability to care for her children, plaintiff testified she had to take her time when cooking or doing other housekeeping chores because her fingers would get numb and she would have pain in her wrists. Tr. 346-48.

In sum, the ALJ failed to support his analysis of Dr. Maly's opinions with substantial evidence and is reversed as to that issue.

//

Page 12 – OPINION AND ORDER

### B.    Anna Lembke, LPC

Ms. Lembke began treating plaintiff in 2022 as her mental health therapist and opined to plaintiff's limitations in a document dated March 15, 2024. Tr. 2159, 2169-62. She diagnosed plaintiff with posttraumatic stress disorder, generalized anxiety, and major depressive disorder. *Id.* She opined plaintiff primarily had symptoms of "[n]ervous system dysregulation, recurrent, involuntary distressing memories and flashbacks leading to dissociative reactions, excessive worry, difficulty concentrating, irritability and agitation, distractibility, sleep disturbance, depressed mood, frequent crying, social withdrawal, altered cognitions of herself and the world related to safety and trust." *Id.* Ms. Lembke stated, "[t]he severity and persistence of [plaintiff's] mental conditions greatly impact her ability to maintain regulation, impacting comprehension, memory, and application." Tr. 2160. She opined plaintiff had "a very difficult time with concentration and maintaining an average pace, often requiring breaks to review information and regain composure." *Id.* Ms. Lembke articulated plaintiff had moderate limitations in her ability to understand, remember, and apply information. *Id.* Further, she opined plaintiff had marked limitations in her ability to concentrate, persist, or maintain pace, adapt or manage herself, and interact with others due to her impairments. *Id.* Ms. Lembke estimated that during a standard 40-hour workweek, plaintiff's "attention and concentration would be impaired to such a degree that she could not be expected to perform even simple work tasks" 25 percent of the time or more due to her anxiety, posttraumatic stress disorder, and depression. Tr. 2162. Similarly, she expected plaintiff to miss over two full days of work per month "[d]ue to the severity and persistence of [plaintiff's] mental health conditions." *Id.*

The ALJ determined Ms. Lembke's opinions were "not persuasive." Tr. 55. He found her opinions unsupported by her treatment notes and inconsistent with the medical record. *Id.* The ALJ

found her opinions of moderate and marked limitations unsupported by her treatment notes because plaintiff presented as "calm with full affect and fully oriented with no abnormalities" at a June 4, 2022, appointment. Tr. 55, 2150. The ALJ then noted "[i]n a more recent examination, Ms. Lembke does note the claimant is depressed, rigid, and guarded." Tr. 55, 2154. The ALJ did not provide a rationale for finding Ms. Lembke's opinions unsupported by her treatment notes despite identifying treatment notes supporting her opinions. Tr. 55.

Regarding consistency, the ALJ found Ms. Lembke's opinions inconsistent with the medical record because it indicated plaintiff had "no desire to start medication," she left occupational therapy "shortly after starting," and she presented at a January 6, 2022, appointment as pleasant, cooperative, and with logical thoughts Tr. 55, 1814, 1818, 890. First, plaintiff tried multiple medications to treat her mental health such as Alprazolam, Lexapro, citalopram, hydroxyzine pamoate, and lorazepam but stopped taking them because "[t]hey all had adverse effects." Tr. 461, 1068, 1171, 1335. Second, plaintiff partook in occupational therapy to improve her memory and hand coordination. Tr. 1254, 108. The timing of when plaintiff stopped attending occupational therapy was irrelevant to her general mental health because the therapy treated plaintiff's memory loss and physical impairments. Nevertheless, plaintiff practiced a prescribed at home exercise program and attended 18 appointments of occupational therapy before she stopped attending in person. Tr. 1814, 1818.

Third, the ALJ found Ms. Lembke's opinions inconsistent with the record because plaintiff presented as "normal" at a January 6, 2022, appointment. Tr. 55, 890. Here, the ALJ improperly isolated evidence of a normal mental status exam to support a finding of non-disability despite evidence of abnormal mental status findings throughout the record. Tr. 55, 890; *see* tr. 1997 ("Positive for dysphoric mood and sleep disturbance. The patient is nervous/anxious."), 2049

("moderate acute emotional distress . . . Demeanor reflects evident sadness and distress. Mild agitation evident . . . Vocal tone is low. Gaze is downward most of our visit. Mood is depressed, patient wept briefly more than once during today's visit; affect congruent . . . I assess suicidal risk as being medium."), 2055 ("Flat affect, mood depressed, no auditory or visual hallucinations, no homicidal or suicidal ideation. Patient is tangential but easily interruptible.") On review, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009. The disability determination must also be based on the record as a whole. *Id.* The ALJ erred because he cited one normal mental status exam and ignored abnormal mental status exams to find Ms. Lembke's opinions inconsistent with the record.

Thus, the ALJ did not support finding Ms. Lembke's opinions unpersuasive with substantial evidence and is reversed as to that issue.

## III.    Remedy

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The issue turns on the utility of further proceedings. *Garrison*, 759 F.3d at 1019, 1021. Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the

"flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The Court concludes the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate. The ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony and Dr. Maly's and Ms. Lembke's medical opinions. The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and plaintiff's testimony about the severity and effects of her impairments. Further proceedings would serve no useful purpose.[5] *See Garrison*, 759 F.3d at 1021 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.") (citations omitted).

If plaintiff's symptom testimony and Dr. Maly's and Ms. Lembke's medical opinions are credited as true, the record reflects plaintiff would be unable to work. Tr. 109, 344-51, 388-95, 1788-93, 2159-62, 122-24. The VE testified that if the ALJ altered the RFC from frequent handling and fingering to occasional handling and fingering bilaterally, the VE "would not have any jobs for that hypothetical." Tr. 122. She further testified "[e]mployers will tolerate up to 10 percent of the day off task, greater than that is work preclusive" and answered "Yes" when asked if an

---

[5] The Commissioner did not argue or identify any useful purpose for further proceedings. *See generally* Def.'s Br. ECF 11.

Page 16 – OPINION AND ORDER

individual being "absent from work more than twice a month on an ongoing basis or six – more than six times a year, that too would be job preclusive?" Tr. 123.

As a result of the VE's testimony, the ALJ would be required to find plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1022 n.28 (explaining "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true"). Finally, the Court does not have any serious doubt as to whether plaintiff is disabled within the meaning of the Social Security Act.

For those reasons, the Court remands this case for the calculation and payment of benefits. *See, e.g., Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Varela v. Saul*, 827 F. App'x 713, 714-15 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as

Page 17 – OPINION AND ORDER

true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

## CONCLUSION

For the above reasons, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 16th day of March, 2026.


                            /s/ Jolie A. Russo
                            Jolie A. Ruso
                            United States Magistrate Judge

Page 18 – OPINION AND ORDER